UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES BOWLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| W.R. GRACE & CO., ROBERT F. | ) |
| CUMMINGS, JR., DIANE H. GULYAS, | ) |
| JULIE FASONE HOLDER, HUDSON LA | ) |
| FORCE, HENRY R. SLACK, | ) |
| CHRISTOPHER J. STEFFEN, MARK | ) |
| TOMKINS, and SHLOMO YANAI, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on April 26, 2021 (the "Proposed Transaction"), pursuant to which W.R. Grace & Co. ("W.R. Grace" or the "Company") will be acquired by affiliates of Standard Industries Holdings Inc.

2. On April 26, 2021, W.R. Grace's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Gibraltar Acquisition Holdings LLC ("Parent") and Gibraltar Merger Sub Inc. ("Merger Sub," and together with Parent, "Gibraltar"). Pursuant to the terms of the Merger Agreement, W.R. Grace's stockholders will receive $70.00 in cash for each share of W.R. Grace common stock they own.

3.     On May 24, 2021, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of W.R. Grace common stock.

9.     Defendant W.R. Grace is a Delaware corporation and maintains its principal executive offices at 7500 Grace Drive, Columbia, Maryland 21044.  W.R. Grace's common stock is traded on the New York Stock Exchange, which is headquartered in New York, New York,

under the ticker symbol "GRA."

10. Defendant Robert F. Cummings, Jr. is a director of the Company.

11. Defendant Diane H. Gulyas is a director of the Company.

12. Defendant Julie Fasone Holder is a director of the Company.

13. Defendant Hudson La Force is President, Chief Executive Officer, and a director of the Company.

14. Defendant Henry R. Slack is a director of the Company.

15. Defendant Christopher J. Steffen is Chairman of the Board of the Company.

16. Defendant Mark Tomkins is a director of the Company.

17. Defendant Shlomo Yanai is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

19. W.R. Grace is a leading global specialty chemical company.

20. The Company's two industry-leading business segments—Catalysts Technologies and Materials Technologies—provide innovative products, technologies, and services that enhance the products and processes of its customers around the world.

21. On April 26, 2021, W.R. Grace's Board caused the Company to enter into the Merger Agreement with Gibraltar.

22. Pursuant to the terms of the Merger Agreement, W.R. Grace's stockholders will receive $70.00 in cash for each share of W.R. Grace common stock they own.

23. According to the press release announcing the Proposed Transaction:

W. R. Grace & Co. (NYSE: GRA), a leading global specialty chemical company and Standard Industries Holdings Inc., the parent company of Standard Industries, a privately held global industrial company, today announced that they have entered into a definitive agreement under which Standard Industries Holdings will acquire Grace in an all-cash transaction valued at approximately $7.0 billion, including Grace's pending pharma fine chemistry acquisition. Standard Industries' related investment platform 40 North Management LLC ("40 North") is a long-standing shareholder of Grace.

Under the terms of the agreement, Standard Industries Holdings will acquire all of the outstanding shares of Grace common stock for $70.00 per share in cash. The purchase price represents a premium of approximately 59% over Grace's closing stock price of $44.05 on November 6, 2020, the last trading day prior to the announcement of 40 North's initial proposal to acquire the Company on November 9, 2020. The Grace Board of Directors unanimously approved the transaction. . . .

The parties expect the transaction to close in the fourth quarter of 2021. Upon completion of the transaction, Grace will become a privately held company and Grace's common stock will no longer be listed on the New York Stock Exchange.

Grace will operate as a standalone company within the portfolio of Standard Industries Holdings, which includes Standard Industries' industry leading businesses GAF, BMI Group, Schiedel, Siplast, SGI and GAF Energy.

Advisors

Goldman Sachs & Co. LLC and Moelis & Company LLC are serving as financial advisors and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Grace.

Citi and J.P. Morgan are serving as financial advisors and Sullivan & Cromwell LLP is serving as legal counsel to Standard Industries Holdings.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

24. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

25. As set forth below, the Proxy Statement omits material information.

26. First, the Proxy Statement omits material information regarding the Company's financial projections.

27. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate adjusted EBITDA and adjusted EBIT; (ii) projected net income; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

28. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

29. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Moelis & Company LLC ("Moelis").

30. With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) Goldman Sachs' basis for selecting the multiples used in the analysis; (iii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iv) the EBITDA used in the analysis; (v) the net debt of the Company; (vi) the number of fully diluted outstanding shares of the Company; (vii) the unlevered free cash flows used in the analysis and all underlying line items; and (viii) the value of the tax attributes of the Company.

31. With respect to Goldman Sachs' Illustrative Present Value of Future Share Price Analysis, the Proxy Statement fails to disclose: (i) Goldman Sachs' basis for selecting the multiples used in the analysis; (ii) the individual inputs and assumptions underlying the discount rates used in the analysis; and (iii) the dividends used in the analysis.

32. With respect to Goldman Sachs' Selected Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the

analysis.

33. With respect to Goldman Sachs' Premia Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

34. With respect to Moelis' Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the Company's net operating losses and other tax credits; (ii) the terminal values of the Company; (iii) the individual inputs and assumptions underlying the discount rates used in the analysis; (iv) Moelis' basis for selecting the multiples used in the analysis; (v) the net debt of the Company; (vi) the number of fully diluted outstanding shares of the Company; and (vii) the unlevered free cash flows used in the analysis and all underlying line items.

35. With respect to Moelis' analysis of research analysts' stock price targets, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37. Third, the Proxy Statement omits material information regarding Goldman Sachs.

38. The Proxy Statement fails to disclose the timing and nature of the past services Goldman Sachs and/or its affiliates have provided to Parent and/or its affiliates, as well as the amount of compensation Goldman Sachs received for providing such services.

39. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

40. Fourth, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements that contained "don't ask, don't waive" provisions.

41. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and W.R. Grace**

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. W.R. Grace is liable as the issuer of these statements.

45. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

49. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of W.R. Grace within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of W.R. Grace and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

55. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 3, 2021        **RIGRODSKY LAW, P.A.**

            By: */s/ Gina M. Serra*
               Seth D. Rigrodsky
               Timothy J. MacFall
               Gina M. Serra
               Vincent A. Licata
               825 East Gate Boulevard, Suite 300
               Garden City, NY 11530
               Telephone: (516) 683-3516
               Email: sdr@rl-legal.com
               Email: tjm@rl-legal.com
               Email: gms@rl-legal.com
               Email: vl@rl-legal.com

               *Attorneys for Plaintiff*